## THE VERMONT STATE BANK *against* DAVID PORTER.

### IN ERROR.

*A.*, being a citizen of *Connecticut*, jointly and severally with others, citizens of *Vermont*, executed a promissory note to the *Vermont State Bank*, payable at the bank, and the note not having been paid, the bank instituted a suit against *A* in *Connecticut ; A.*, pending the suit, offered payment of the debt and costs in the bills of the *Vermont State Bank*, and in pursuance of the laws of *Vermont*, pleaded the same, by way of set-off to the plaintiffs' demand ; held, that such plea was sufficient.

*A.* being sued on a promissory note executed in *Vermont*, and payable at the *Vermont State Bank*, for 4000 dollars, with interest, pleaded in bar, a tender of a certain sum in full of the debt and costs ; the plaintiff replied new matter, without traversing the sufficiency of the sum tendered ; to which replication, there was a demurrer ; held, that the plea was good, although, on the face of the declaration and pleadings, computing the interest at the rate of 6 *per cent. per annum*, the sum tendered appeared to be less than the plaintiffs' demand.

THIS was an action of *assumpsit* on a promissory note, brought in the name of the President and Directors of the *Vermont State Bank* against the defendant. The note was made payable directly to the president and directors, and was executed jointly and severally by the defendant and two others, for the sum of 4000 dollars, dated the 27th day of *April*, 1808, and payable at the branch of the bank located at *Westminster* in the state of *Vermont*, sixty days after its date, with interest after the same should become payable. The note was executed and delivered to the plaintiffs in the state of *Vermont* ; and at the time of its execution and delivery, and also, at the time of the commencement of the action,

the defendant was a citizen of *Connecticut*, and the other promissors were citizens of *Vermont*.

The defendant pleaded in bar of the plaintiffs' demand, in manner following, *viz*. " The defendant on the 10th day of *September*, 1811, at *Hartford*, in the county of *Hartford*, while said suit was pending, offered and tendered to *William Mose-ley*, Esq. agent and attorney to the plaintiffs, the sum of 4445 dollars, 25 cents, being the full sum due on said note, and the costs accrued in this suit ; which sum so offered and tendered was in notes or bills issued by and under the authority of the president and directors of the *Vermont State Bank*, and were respectively signed, ' *Titus Hutchinson*,' president of said bank, and countersigned by the respective cashiers of the various branches of said bank from which they issued, and were due from said bank to the defendant." [Here followed a description of the number and denomination of the bills tendered, and of the branches from whence they respectively issued.] " And the said *William* did refuse to accept the same ; and the defendant hath ever since been ready to pay the same, and now offers and tenders the same in court ; all which the defendant is ready to verify, and prays judgment that the same may be set-off against the claim of the plaintiffs."

This plea was founded upon certain statutes of *Vermont*, relating to set-off, which were recited at length. (*a*)

(*a*) The statute entitled " An act constituting the Supreme Court of Judicature, and County Courts, defining their powers, and regulating judicial proceedings," provides, among other things, that if the plaintiff in any action pending before any court, on bond, bill, note, or other contract, shall be indebted to the defendant in such action, the defendant, after pleading the general issue, or confessing the plaintiff's cause of action, may plead an off-set of any sum or sums due to him from the plaintiffs as aforesaid; which plea shall be in the nature of a declaration of one or more counts, as the nature of the case may require ; and if the plaintiff shall plead the general issue to any or all the counts in the defendant's plea, or shall confess the cause of action contained in any or all the counts in the defendant's plea, he may, in like manner, plead an off-set of any sum or sums due to him from the defendant as aforesaid ; and the issue and pleadings being closed, the jury shall be

It was alleged in the replication, that on the 23d day of *October*, 1809, prior to the commencement of the suit, the plaintiffs, for value received, sold, assigned and delivered the note on which, &c. to one *Gaius Lyman* of *Hartford*, in the State of *Connecticut*, and that *Lyman* was the *bona fide* holder of the note. Upon this, there was a demurrer and joinder in demurrer. The replication was adjudged insufficient, by the Superior Court : And to reverse this judgment, the present writ of error was brought.

*E. Perkins* and *N. Terry*, for the plaintiffs. (*b*)

*Daggett* and *T. S. Williams*, for the defendant.

SWIFT, J. This is an action on a note given to the *Vermont State Bank*, and executed in that state. The defence is, that since the commencement of the suit, the defendant has paid the debt in the bills of that bank, pursuant to a law of that state, enabling the promissor of a note to the bank, if sued in that state, to pay it in bills of the same, and plead such payment by way of set-off to the debt.

directed to find, generally, such sum or sums as shall be found in arrear for either, and judgment shall be rendered therein accordingly," &c.

In the first section of the statute entitled " An act suspending the process of law in certain cases, and for other purposes," it is provided, that whenever any suit shall be pending before any of the courts in this state, or any contract entered into by private persons with any banking company, and the defendant or defendants in such suit, shall offer to such banking company, or their attorney or agent, the full amount due on such contract, and the legal costs thereon, in bills issued by, or under the authority of the president and directors of such company, the defendant or defendants in such action may, on refusal to accept such bills, as aforesaid, plead such bills in off-set against such action, in the same manner, as he, she or they might have done, if payment had been demanded on said bills before said action had been commenced." This act was passed on the 9th day of *November*, 1809.

(*b*) On the argument of this case, it was admitted by the counsel for the plaintiffs, that the replication was insufficient. They relied wholly upon the insufficiency of the defendant's plea.

It has been contended, for the defendant, that the act of the legislature of *Vermont* incorporating this bank, is opposed to that clause in the constitution, which forbids a state to emit bills of credit, on the ground that the redemption of the bills depends on the faith and credit of the state of *Vermont*. The object of the framers of the constitution in inserting this restriction upon the powers of the state goverments, was to prevent them from making a paper currency, which had been productive of much inconvenience at that period ; but it was not intended to prevent them from establishing banking institutions for their own benefit. Though in this instance, there are no permanent funds for the payment of the bills, nor any compulsory process to enable the holders to obtain payment ; yet the notes received by the president and directors for bills issued and loaned, are a fund to redeem them. The bank does not rest on the sole faith and credit of the state ; and the establishment is not repugnant to the constitution of the *United States*.

It has been contended, on the part of the plaintiffs, that the plea of the defendant is bad, because a sufficient sum in bills has not been offered, as it appears by a calculation of interest, at six per cent. on the principal sum secured in the note, there will be considerable deficiency ; but the defendant has alleged that he offered a certain sum in full of the debt. This allegation was traversable ; if, therefore, the sum was insufficient, an issue might have been joined on that point ; and it does not appear from the record what is the rate of interest in *Vermont*, or that payments have not been made : of course, there are no *data* by which the court, under a demurrer, can say, that the sum was insufficient.

It has been argued by the plaintiffs, that the act of the legislature of *Vermont*, enabling debtors of the bank to pay their notes in bills, is repugnant to that clause in the constitution of the *United States*, which forbids states to make any thing a tender in payment of debts,except gold and silver coin, or to pass any laws impairing the obligation of contracts : but this does not prohibit states from enacting laws for the set-off of mutual debts. This act of *Vermont* is a law

June, 1812.

VERMONT
BANK
*v.*
PORTER.

of that description, passed by the real plaintiffs in this case, and may not only be considered as a law authorising the defendant to make this set-off; but as an agreement on their part to receive their own bills in payment of debts due to them. But the principal question is, whether the payment in this state, as set forth in in the plea, is a bar to this note, by the laws of the state of *Vermont*, where the contract was executed?

The general rule of law is, that contracts made in one state, and valid by its laws, shall be deemed valid in every other state; provided, that the state, before whose courts the contract is attempted to be enforced, or its citizens, shall not suffer any inconvenience by it; and that the consideration be not immoral; or that giving the contract effect, will not have a bad tendency. The laws of the place, however, apply only to the nature, validity and construction of contracts; and not to the form of the action, the course of judicial proceeding, and the time when the action may be commenced. These must be according to the laws of the place where the action is brought.

It is contended on the part of the plaintiffs, that this payment by the defendant, as pleaded, relates to the remedy on the contract, and must, therefore, be governed by the laws of the state where the action is brought; and as such payment is not warranted by the laws of this state, it constitutes no defence to the action.

It is, certainly, proper, that the form of the action, and the course of judicial proceedings, should be according to the laws of the place where the action is brought; for the forms of trial are very different in different countries; and it would be extremely inconvenient to introduce the practice of the courts of one country into those of another. But this relates merely to the form of the action, the mode of pleading, of trial, and of awarding execution. For instance, in countries where the civil law prevails, trials of issues in fact must be by the judges; in countries where the common law prevails, by the jury. The question, whether a set-off shall be made of mutual debts, does not relate to the form of proceeding,

but goes to the merits of the case ; and shews, that no recovery ought to be had.   So far from relating to the form of the remedy, it shews there ought to be no remedy.

But it has been said, that the plea of set-off is unknown to our laws, and therefore, cannot be made.   It is true, we have no statute authorising a set-off of mutual debts ; but the general rules of the common law enable a defendant to plead any matter in bar, which destroys the plaintiff's right to recover : and if a set-off can be made by law so as to avoid the claim of the plaintiff, the common law will supply a form for pleading it : for though the forms of proceeding are different in different jurisdictions, yet the substantial principles of justice ought to be equally regarded in all.

It has been said, that this plea of set-off, is analogous to the plea of the statute of limitations, and that courts will not regard the acts of limitation respecting contracts made in another jurisdiction ; but statutes of limitation do not relate to the nature or validity of the contract.   The reason why they have not been allowed is, that it would encroach upon the authority of courts, to permit the laws of another state to controul their proceedings.   A statute of set-off is founded on those principles of justice, which ought to be respected in all countries.   Instead of avoiding a just claim, by length of time, it interposes a mutual debt, which must always be a just ground of defence.   There is, therefore, no analogy between the statutes.

It has been further contended, that admitting such tender might have been good, if made in *Vermont*, yet being made in *Connecticut*, it cannot be good, because the laws of *Vermont* cannot extend beyond the limits of that state, so as to enable the party to do an act which constitutes a defence.   This is assuming the principle, that where a contract is made in one state, and the contracting parties live in another, where the law respecting the performance of such contract is different, the party whose duty it is to perform such contract, cannot avail himself of the law where the contract was made, but must conform to the law of the place where he performs the contract.

VOL. V.                        Q q

June, 1812.

VERMONT
BANK
*v.*
PORTER.

To support this position the case of *Burrows* v. *Jemino*, 2 *Stra. Rep.* 733. and *Inglis & al.* v. *Usherwood*, 1 *East's Rep.* 515. are relied on. But these cases do not warrant this doctrine. In the first, the only point decided was, that in a suit against the acceptor of a bill of exchange, in *Leghorn*, the local laws of the place where the bill was negociated, should govern, and not the law of *England*. In the other case, the point decided was, that on a sale of goods, in *Russia*, the right to stop them *in transitu*, should be according to the law of *Russia*, and not according to the law of *England*. These cases establish the principle only, that contracts shall be construed, and take effect, according to the law of the place where they are made.

I apprehend, then, that the true doctrine is, that the law of the place decides the right and the duty of the contracting parties in the performance of a contract ; and that where a contract, made in one country, is performed in another, the performance must be according to the law of the place where the contract was made. This is the necessary consequence of the doctrine, that the law of the place where contracts are made, shall govern them ; otherwise, a contract may be essentially changed, by the removal of the parties.

It has ever been considerd, in practice, that contracts must be performed according to the law of the place where made, to enable the parties to defend against a demand upon them. Suppose a note is given in the state of *New-York*, for lawful interest, and the parties remove into this state, the promissor must tender seven *per cent.* interest, being the lawful interest of the state of *New-York ;* though by our law, six *per cent.* is the lawful rate of interest. Suppose a note should be given in *Great-Britain*, for lawful interest, and the parties should remove into this state, the promissor might tender five *per cent.* interest, which is the lawful interest of that country ; and this would be a performance of the contract. In this case, he would do an act in this state, not conformable to our laws, but to the laws of *England*, which would constitute a defence against an action on the note.

It also, appears to me, to be a sound principle, supported by analogy, and uncontradicted by any authority, that whatever is a good defence upon the merits of the case, in the country where the contract was made, is a good defence in the country where the action is brought. This necessarily results from the rule, that contracts are to be governed by the laws of the place where made ; for there is the same reason, that the defendant should have advantage of local laws in his defence, as that the plaintiff should have such privilege, in supporting his claim. It would be highly unreasonable to determine, that the plaintiff, by virtue of the laws of the state of *Vermont*, can, upon a contract there executed, maintain an action in the courts of this state, and then refuse the defendant the privilege, allowed by the laws of *Vermont*, of pleading a set-off of a mutual debt, because a set-off is not known to our laws.

As the plea states a meritorious defence by the laws of *Vermont*, I am of opinion, that the plaintiffs are not entitled to recover ; and that the judgment of the Superior Court be affirmed.

The other Judges concurred in this opinion ; and

REEVE, J. went further, holding the establishment of the *Vermont State Bank*, to be contrary to the constitution of the *United States*, which prohibits the emission of a paper currency.

Judgment affirmed.